**United States District Court**
For the Northern District of California

1

2

3

4

5

6          IN THE  UNITED  STATES  DISTRICT  COURT

7          FOR THE  NORTHERN  DISTRICT  OF  CALIFORNIA

8

9    VERONICA A. HARRISON,                    No. C 07-0921 CW

10              Plaintiff,                     ORDER GRANTING
                                               DEFENDANTS' MOTION
11       v.                                    FOR SUMMARY JUDGMENT

12   THE CITY OF OAKLAND, et al.,

13              Defendants.
     _____/
14

15

16        Plaintiff Veronica A. Harrison alleges that her Fourth

17   Amendment right to be free from unreasonable seizure was violated

18   when she was arrested by an Alameda County Sheriff's Deputy.

19   Defendants County of Alameda, Alameda County Sheriff's Department,

20   Sierry Wilhelm, Gregory Ahern and Charles Plummer move for summary

21   judgment on the claims against them.[1]  Plaintiff opposes the motion

22   except with respect to: 1) her claims against Defendants Plummer

23   and Ahern in their individual capacities; and 2) her claims for

24   violations of her rights under the Fifth, Eighth and Fourteenth

25   Amendments.  The matter was heard on October 30, 2008.  Having

26   _____

27        [1]Plaintiff's claims against Defendants City of Oakland,
     Oakland Police Department, Richard Buckhout and Andrew Brosi have
28   already been dismissed.

considered oral argument and all of the papers submitted by the parties, the Court grants Defendants' motion.

BACKGROUND

At approximately 7:00 p.m. on December 14, 2005, Plaintiff's brother drove her to the MacArthur BART station in Oakland, California. Plaintiff's boyfriend was also in the car. They arrived at the station at approximately 7:15 p.m. and Plaintiff exited the car. As she was walking toward the station, an Alameda County Sheriff's Department patrol car pulled up behind Plaintiff's brother's vehicle, which was parked in a red bus zone, and began flashing its lights. Sheriff's Deputy Richard Buckhout got out and approached the car. He requested identification from both Plaintiff's brother and her boyfriend. After performing a records search based on their driver licenses, Deputy Buckhout learned that both men had outstanding warrants for their arrest. He arrested them and searched their car.

While this was happening, Plaintiff approached the car to find out what was going on. She told Deputy Buckhout that she was the driver's sister and asked him why her brother and her boyfriend were being arrested. Deputy Buckhout instructed Plaintiff to stay where she was and told her that he would discuss the matter with her once he was finished.

As Plaintiff was waiting, Defendant Wilhelm, also a Sheriff's Deputy, arrived on the scene to provide backup. He approached Plaintiff, who he asserts was being "loud and boisterous and directing questions at Deputy Buckhout," Wilhelm Dec. ¶ 3, and inquired about her presence. Plaintiff explained that she was the sister of one of the men who were being arrested and asked what was

2

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

going on.  In response, Deputy Wilhelm asked to see Plaintiff's identification.  Plaintiff characterizes the request as a demand; she testified at her deposition that Deputy Wilhelm stated, "Show me your driver's license."  Defs.' Ex. D at 86.  According to Plaintiff, she asked Deputy Wilhelm why he needed to see her license, to which Deputy Wilhelm responded by again telling her to hand over her identification.  After Plaintiff again questioned the need to provide her identification, Deputy Wilhelm allegedly stated, "If you want to know what's going on with your brother, you have to give me your license."  Id. at 87.  Plaintiff testified, "I felt like I didn't have a choice.  I gave him my driver's license so I [could] find out what was going on with my brother."  Id. Deputy Wilhelm concedes that, when he asked Plaintiff for her identification, he did not believe that Plaintiff had committed a crime.  See Roubinian Dec. Ex. A (Wilhelm Dep.) at 30.  However, he believed that Plaintiff was distracting him from providing security from Deputy Buckhout.  Wilhelm Dec. ¶ 4.

    After Plaintiff gave Deputy Wilhelm her identification, he contacted the Sheriff's Office dispatcher to have a records check performed.  At 7:46 p.m., the dispatcher identified an outstanding warrant for Plaintiff's arrest via the Automated Warrant Service and informed Deputy Wilhelm.  Deputy Wilhelm then handcuffed Plaintiff, performed a search of her person[2] and put her in the back of his patrol car.  At 7:48 p.m., he requested verification

_____

    [2]Plaintiff claims that, because her pants were somewhat loose, they dropped down a bit while Deputy Wilhelm was searching the pockets, leaving her feeling "a little exposed."  Defs.' Ex. D at 95-96.  Plaintiff does not appear, however, to assert that the manner of the search violated the Fourth Amendment.

that the warrant was valid.  The dispatcher advised the Warrants and Records Department of the request at 7:50 p.m.  A legal process clerk in this department called the warrants department of the Broadmoor Police Department, the authority that had issued the outstanding warrant.  The police department verified that the warrant was valid.  The legal process clerk relayed the message to the dispatcher, who informed Deputy Wilhelm of the warrant's validity at 7:54 p.m.  Deputy Wilhelm then placed Plaintiff under arrest.

At 8:15, Deputy Wilhelm advised the dispatcher that he was taking Plaintiff to Glenn Dyer Jail.  At 8:20, the legal process clerk informed the dispatcher that the Broadmoor Police Department had called her back to tell her that the warrant for Plaintiff's arrest had been recalled, and therefore was not valid.  The dispatcher immediately relayed this information to Deputy Wilhelm, who then returned to the MacArthur BART station.  He was approximately one mile away from the station when he learned that Plaintiff's arrest warrant was not valid.

According to Plaintiff, upon the patrol car's arrival at the BART station, Deputy Wilhelm "informed [her] that [she] was not free to go" until she signed a form.  Harrison Dec. ¶ 22.  Because he was out of forms, Plaintiff maintains, Deputy Wilhelm said she had to wait until another deputy arrived with one.  The form in question is a "Certificate of Release," which is required by California law to be provided to persons who are arrested without a warrant and subsequently released because a peace officer determines that there are insufficient grounds for making a criminal complaint against them.  See Cal. Penal Code §§ 851.6(a),

4

849(b)(1), (c).  The relevant statute also provides that such

arrestees shall thereafter be deemed not to have been "arrested,"

but merely "detained."  Id. § 849(b)(1).  This provision appears to

be for the benefit of the arrestees, in that they are able to avoid

having an arrest on their criminal record.  See Armondo v. Dep't of

Motor Vehicles, 15 Cal. App. 4th 1174, 1177-78 (1993); 43 Op. Cal.

Att'y Gen. 288 (1964) ("[A] person who has been released under the

provisions of Penal Code section 849 subdivision (b) subsection (1)

may give a "no" answer in reply to questions concerning his arrests

when applying for employment.")[3]  Deputy Wilhelm states that he did

not tell Plaintiff she could not leave until the other deputy

arrived with the certificate of release; he told Plaintiff "that

she was no longer under arrest, but suggested that it was in her

best interest to wait for the Certificate of Release."  Wilhelm

Dec. ¶ 11.

       At Plaintiff's request, before the other deputy arrived with

the certificate of release, Deputy Wilhelm removed Plaintiff's

handcuffs and let her out of the patrol car.  She then sat on the

ground and waited.  It is not clear how much time passed between

the patrol car's arrival at the BART station and Plaintiff's

release from handcuffs and the car.  Plaintiff's deposition

testimony suggests that any delay was brief.  See Defs.' Ex. D at

116-17.  However, in a declaration submitted in support of the

present motion, Plaintiff states that she "remained handcuffed

_____

       [3]Plaintiff was arrested pursuant to a warrant, albeit an
invalid one.  Thus, it is not entirely clear that this provision of
the California Penal Code applies to her.  Nonetheless, it is
undisputed that Deputy Wilhelm believed that he was required to
issue Plaintiff a certificate of release.

United States District Court
For the Northern District of California

despite informing Deputy Wilhelm, yet again, that the handcuffs were too tight and hurt terribly." Harrison Dec. ¶ 22. While she was waiting for the other deputy to arrive with the certificate of release, Plaintiff asserts, she asked Deputy Wilhelm for her purse, which contained her cellular phone, so that she could call her mother to arrange for a ride from the station. According to Plaintiff, Deputy Wilhelm gave her the purse, but removed the phone first because he thought she might use it to call someone for the purpose of harming him.

Once the other deputy arrived with the certificate of release, Deputy Wilhelm filled out the form and offered it to Plaintiff along with her arrest report. He asked her to sign the arrest report, but she refused to do so. Plaintiff maintains that she refused to sign the report because the certificate of release contained a certification by Deputy Wilhelm that "the taking into custody of Veronica Harrison . . . was a detention only, not an arrest." Defs.' Ex. G. Because Plaintiff believed she had been arrested, she interpreted this language as a false statement and thought that signing the arrest form would be against her interest.[4] Deputy Wilhelm provided Plaintiff with the certificate of release and her cell phone, and departed from the station at 8:41 p.m., slightly less than an hour after he requested Plaintiff's identification.

---

[4]At her deposition, Plaintiff apparently conflated the certificate of release and the arrest report. Unlike the arrest report, the certificate of release did not contain a blank for her signature. See Defs.' Ex. G.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

DISCUSSION

Plaintiff asserts that Deputy Wilhelm violated her Fourth Amendment right to be free from unreasonable searches and seizures in two ways: 1) by coercing her into providing her driver's license and then conducting a warrant check on her; and 2) by not immediately releasing her once the patrol car arrived back at the

United States District Court
For the Northern District of California

MacArthur BART station.[5]  Plaintiff also asserts that the County of Alameda, the Alameda County Sheriff's Department, and Defendants Ahern and Plummer (the current and former Sheriffs of Alameda County, respectively) should be held liable for Fourth Amendment violations because Deputy Wilhelm's conduct was the result of a policy of widespread Fourth Amendment violations.

I.    Claims Against Deputy Wilhelm

Plaintiff charges Deputy Wilhelm with violating the Fourth Amendment by demanding that she provide him with her identification and using the identification to perform a search for outstanding warrants.  The Fourth Amendment does not prohibit police officers from asking an individual to present his or her identification, even without having any suspicion that the individual has committed a crime, "as long as the police do not convey a message that compliance with their requests is required."  Florida v. Bostick, 501 U.S. 429, 434-35 (1991).  The Fourth Amendment is not violated by such a request for identification if, under the totality of the circumstances, "a reasonable person would feel free to decline the officers' request[] or otherwise terminate the encounter."  Id. at 436-437.

Plaintiff does not submit that she believed she was not free to terminate her encounter with Deputy Wilhelm and leave the scene.  Rather, she argues that she was coerced into turning over her identification because Deputy Wilhelm allegedly told her that doing so was the only way to obtain information about the arrest of her

_____

[5]Notably, Plaintiff does not claim that, after being notified that there was an outstanding warrant for her arrest, Deputy Wilhelm violated the Fourth Amendment by arresting her.

brother and her boyfriend.  It is true that "[c]itizens do not
forfeit their constitutional rights when they are coerced to comply
with a request that they would prefer to refuse."  <u>Id.</u> at 438.
Controlling precedent, however, holds that an individual is
"coerced" into complying with a request for identification only if
a reasonable person would not feel free to decline the officer's
requests or otherwise terminate the encounter.  <u>See, e.g.</u>, <u>United</u>
<u>States v. Drayton</u>, 536 U.S. 194, 201-02 (2002).  While Plaintiff
wanted information from Deputy Wilhelm, it is undisputed that she
was free to leave without presenting her identification.  Because
Plaintiff has not shown that she was coerced in the relevant sense
of the word, the request for her identification did not violate the
Fourth Amendment.

Plaintiff argues that, even if the request itself was lawful,
a seizure was nonetheless effected once Deputy Wilhelm retained the
identification and conducted a background check, because she could
not have felt free to leave the scene without her identification.
Adopting this approach would eviscerate the rule that a law
enforcement officer may ask an individual for identification
without having any suspicion that he or she has committed a crime,
because as soon as the individual complies with the constitutional
request, an unconstitutional seizure will have occurred.  The only
case Plaintiff cites in support of her position is <u>People v.</u>
<u>Castaneda</u>, 35 Cal. App. 4th 1222 (1995), in which the California
Court of Appeal noted that, once the plaintiff had complied with a
police officer's request to hand over his identification, "a
reasonable person would not have felt free to leave."  <u>Id.</u> at 1227.
<u>Castaneda</u>, however, is not binding on this Court, and the Court

**United States District Court**
For the Northern District of California

declines to follow it to the extent it would compel the conclusion that Plaintiff's Fourth Amendment rights were violated once she handed Deputy Wilhelm her identification.  Such a conclusion would not be compatible with the rule in <u>Bostick</u> and other Supreme Court precedent.[6]

Plaintiff also asserts that Deputy Wilhelm violated her Fourth Amendment rights by continuing to detain her after he learned that the warrant for her arrest was not valid.  Plaintiff alleges that, although Deputy Wilhelm removed the handcuffs and let her out of the patrol car after he returned to the MacArthur BART station, he told her that she was not free to leave until the other deputy arrived with the certificate of release.  Plaintiff also alleges that Deputy Wilhelm kept her cellular phone in his possession, further preventing her from departing.  This version of events is disputed, but a juror could reasonably conclude that Deputy Wilhelm imposed a restraint on Plaintiff's liberty after learning that the warrant was invalid, thereby violating her Fourth Amendment rights.  Summary judgment on the basis that no Fourth Amendment violation occurred would therefore not be appropriate.

Deputy Wilhelm argues that, even if his conduct infringed

_____

[6]Even if the Court were to conclude that Deputy Wilhelm's retention of Plaintiff's identification for a brief period of time while he conducted a warrant check constituted a Fourth Amendment violation, as discussed in greater detail below, Deputy Wilhelm would be entitled to qualified immunity unless it would have been clear to a reasonable officer in his position that his conduct was unlawful.  In light of the legal authority holding that an officer does not violate an individual's Fourth Amendment rights by asking for his or her identification, it would not have been clear to a reasonable officer in Deputy Wilhelm's position that Plaintiff's rights would have been violated once she handed over her identification, notwithstanding <u>Castaneda</u>.  Deputy Wilhelm would therefore be entitled to qualified immunity on this claim in any event.

United States District Court
For the Northern District of California

Plaintiff's Fourth Amendment rights, he is entitled to qualified immunity.   The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."   Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

To determine whether a defendant is entitled to qualified immunity, the court must apply a two-part analysis.   The first question is whether the facts, when taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right.   Torres v. City of Los Angeles, 540 F.3d 1031, 1044 (9th Cir. 2008).   If so, the second question is whether the constitutional right at issue was "clearly established" at the time of the conduct at issue.   Id. As discussed above, a reasonable juror could find that Deputy Wilhelm violated Plaintiff's Fourth Amendment rights by preventing her from leaving immediately after the two of them returned to the BART station. Accordingly, the Court must determine whether those rights were clearly established.   In determining whether a constitutional right was clearly established, the court should not consider the right as a "general proposition."   Id. at 1045.   "Rather, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"   Id. (quoting Saucier, 533 U.S. at 202)

11

**United States District Court**
For the Northern District of California

1 (alteration and omission in <u>Torres</u>).

2    As noted above, California law requires that a person who is

3 arrested and then released because the arresting officer concludes

4 that there are insufficient grounds for making a criminal complaint

5 "shall be issued a certificate, signed by the releasing officer or

6 his superior officer, describing the action as a detention." Cal.

7 Penal Code § 851.6(a). Given the mandates of California law, a

8 reasonable officer in Deputy Wilhelm's position could have

9 concluded that it would not be unlawful to tell Plaintiff to wait,

10 unrestrained, for a brief amount of time until another deputy

11 arrived with the certificate of release that Plaintiff was required

12 to be given. Accordingly, Deputy Wilhelm is entitled to qualified

13 immunity on Plaintiff's Fourth Amendment claim.

14 II.   Claims Against the County Defendants

15    Plaintiff's claims against Defendants Plummer and Ahern in

16 their official capacities, as well as her claims against the

17 Alameda County Sheriff's Department, are claims against the County

18 of Alameda itself. See <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66

19 (1985) ("[A]n official-capacity suit is, in all respects other than

20 name, to be treated as a suit against the entity."); <u>Vance v.

21 County of Santa Clara</u>, 928 F. Supp. 993, 996 (N.D. Cal. 1996)

22 ("Naming a municipal department as a defendant is not an

23 appropriate means of pleading a § 1983 action against a

24 municipality."). Counties and municipalities cannot be held

25 vicariously liable under § 1983 for the actions of their employees.

26 <u>Monell v. N.Y. City Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978).

27 "Instead, it is when execution of a government's policy or custom,

28 whether made by its lawmakers or by those whose edicts or acts may

fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694.  More specifically, local governments may be held liable for inadequate training of law enforcement officers -- as Plaintiff alleges is the case here -- "only where failure to train amounts to deliberate indifference to the rights of persons with whom the [law enforcement officers] come into contact," and "the identified deficiency in a [local government's] training program [is] closely related to the ultimate injury." City of Canton v. Harris, 489 U.S. 378, 388, 391 (1989).

Plaintiff has come forward with no evidence that the alleged violation of her Fourth Amendment rights was caused by a policy or practice of the County.  She points only to an excerpt from the deposition testimony of Commander Casey Nice of the Alameda County Sheriff's Department.  Commander Nice was designated by the County pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure as a witness with knowledge of the County's training procedures for members of the Sheriff's Department.  During the relevant portion of the deposition, Commander Nice stated that it was his understanding that, if an officer is performing a warrant check after an individual has voluntarily relinquished his or her identification and the officer did not previously have a reason to detain the individual, he or she is free to leave, without his or her identification, before the warrant check is completed.  See Roubinian Dec. Ex. C at 45-46.  Plaintiff claims this policy is contrary to law because, as noted above, the California Court of Appeal held in Castaneda that, once the plaintiff had handed over his identification to the police officer, a reasonable person in

United States District Court
For the Northern District of California

his position would not have felt free to leave, and thus the police officer's retention of the identification could be considered a "detention" subject to the Fourth Amendment's protections.  35 Cal. App. 4th at 1227.  There is no conflict between the County's policy and <u>Castaneda</u>, and Plaintiff fails to explain how allowing individuals to depart while an identification search is proceeding, as opposed to requiring them to remain in the area, violates their Fourth Amendment rights.

Plaintiff claims that she needs additional discovery in order to demonstrate that summary judgment should not be granted on her claim against the County.  Rule 56(f) of the Federal Rules of Civil Procedure provides that the court may deny a motion for summary judgment "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment."  <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 922 (9th Cir. 1996).

Plaintiff has submitted a declaration from her counsel stating that the County has not produced certain training materials that Commander Nice referred to in his deposition.  However, Defendants produced other training material in response to Plaintiff's earlier document requests, and Plaintiff has not moved to compel the production of additional material, despite the fact that Defendants objected to the relevant document request as, among other things, vague, overbroad and unduly burdensome.  <u>See</u> Supp. Sazama Dec. Ex.

United States District Court
For the Northern District of California

H at 12 (Resp. to Pl.'s Req. No. 24).[7]  Plaintiff also deposed
Commander Nice about the County's training and policies, and
apparently did not uncover any evidence in support of her claim
other than the excerpt referenced above.  She has not demonstrated
any likelihood that the training materials she seeks will show that
a specific deficiency in the County's training program resulted in
deliberate indifference on the part of Sheriff's deputies to the
rights of persons with whom they came into contact.  Nor would
complaints by members of the public against Deputy Wilhelm, which
Plaintiff now seeks to compel Defendants to produce, show that his
alleged violation of Plaintiff's Fourth Amendment rights
represented a policy of the County.

        Moreover, Plaintiff's contention that she does not have enough
discovery to prove her case against the County is not well taken in
light of her failure to pursue such discovery until now.  On a Rule
56(f) motion, the district court acts within its discretion "by
denying further discovery if the movant has failed diligently to
pursue discovery in the past."  Nidds, 113 F.3d at 921.  Plaintiff
did not notice her Rule 30(b)(6) deposition until September 22,
2008.  It took place on October 6, just over three weeks before the
discovery cutoff of October 30, and only three days before
Plaintiff's opposition to the present motion was due.  In addition,
Defendants served their objections to the relevant document
requests on July 3, 2008.  Although Plaintiff has now filed a
motion to compel, the motion is not relevant to her claim against

_____

    [7]On October 24, 2008, Plaintiff filed a motion to compel
certain material related to complaints against Deputy Wilhelm.  The
motion, however, does not seek to compel the production of
additional training material.

the County and, in any event, she has not explained her nearly four-month delay in bringing it.  Plaintiff cannot rely on Rule 56(f) to seek further discovery at this late stage of the proceedings.

Because Plaintiff has produced no evidence to create a triable issue of fact on her claim against the County of Alameda, and because she has not shown that the additional discovery she seeks will enable her to do so, Defendants' motion for summary judgment on this claim will be granted.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.  Plaintiff's motion to compel is DENIED as moot.  The clerk shall enter judgment and close the file.  The parties shall bear their own costs.

IT IS SO ORDERED.

Dated: 11/14/08

_____
CLAUDIA WILKEN
United States District Judge